# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMI EZELL, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| ALERT MEDICAL ALARMS, INC. | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

Plaintiff Tami Ezell ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), by and through the undersigned attorneys, brings this class action against Defendant Alert Medical Alarms, Inc. ("AMA" or "Defendant") and complains and alleges upon personal knowledge as to her own actions and her counsel's investigations, and upon information and good faith belief as to all other matters, as follows:

## **INTRODUCTION**

1. Plaintiff brings this class action against AMA for its failure to secure and safeguard personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") of thousands of individuals.

2. AMA is a Pennsylvania corporation that provides personal emergency response systems ("PERS") for seniors and medically vulnerable individuals nationwide. AMA's PERS devices and services are designed to provide immediate emergency assistance and monitoring services to seniors and medically vulnerable individuals, thereby supporting improved health outcomes and enabling independent living.

3. Customers and patients of AMA are required to provide AMA with, or otherwise allow AMA to collect, sensitive Private Information, including their names, addresses, dates of birth, bank account numbers, customer ID numbers, case numbers, health insurance information, Medicaid numbers, prescription and medication information, medical conditions, and Social Security numbers. By being entrusted with this sensitive information, AMA assumed a legal duty to reasonably safeguard it.

4. The data breach at issue in this litigation ("Data Breach") involved a ransomware attack on AMA's network on or about June 17, 2025. The Qilin ransomware group publicly claimed responsibility for the attack on or about July 1, 2025. On information and belief, the attackers exfiltrated sensitive data from AMA's systems and threatened to publish the stolen data unless a ransom was paid.

5. According to AMA and public reports, the exposed Private Information may include, but is not limited to: names, addresses, dates of birth, bank account numbers, customer ID numbers, case numbers, health insurance information, Medicaid numbers, prescription and medication information, medical conditions, and Social Security numbers. The exact data compromised varies by individual, but AMA confirmed that sensitive personal and health information was potentially stolen.

6. AMA's notification letters merely state that AMA is offering complimentary credit monitoring and identity theft protection services. The consumer notification acknowledges that Plaintiff's and Class Members' Private Information was unlawfully accessed by cybercriminals, but AMA did not disclose how the cybercriminals gained access to its systems, the means and mechanism of the cyberattack, the reason for the eight-month delay in disclosing the Data Breach, how it determined that Private Information had been accessed by the unauthorized actors, and,

importantly, what specific steps it took following the Data Breach to secure its systems and prevent future cyberattacks.

7. The Data Breach was a direct result of AMA's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect Private Information from the foreseeable threat of a cyberattack.

8. Plaintiff brings this class action lawsuit individually and on behalf of those similarly situated to address AMA's inadequate safeguarding of Plaintiff's and Class Members' Private Information that it collected and maintained, and for failing to provide adequate and timely notice to Plaintiff and Class Members.

9. Plaintiff brings claims for negligence, breach of implied contract, unjust enrichment, and declaratory and injunctive relief. To remedy these violations of law, Plaintiff and Class Members seek actual damages, statutory damages, restitution, and injunctive and declaratory relief (including significant improvements to AMA's data security protocols and employee training practices); reasonable attorneys' fees, costs, and expenses incurred in bringing this action; and all other remedies this Court deems just and proper.

## PARTIES

### Plaintiff

10. Plaintiff Tami Ezell is, and all relevant times has been, a resident of Dauphin County, Pennsylvania, and a citizen of the Commonwealth of Pennsylvania.

11. Plaintiff is a patient and/or customer of AMA who utilized AMA's personal emergency response systems services. As a condition of receiving services from AMA, Plaintiff provided (directly or indirectly) her Private Information to AMA. In requesting and maintaining Plaintiff's Private Information for its business purposes, AMA undertook a duty to act reasonably in its

handling of Plaintiff's Private Information. On information and belief, AMA did not take proper care of Plaintiff's Private Information, leading to its exposure by cybercriminals as a direct result of AMA's inadequate security measures.

12. Plaintiff is very careful about sharing sensitive Private Information. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

13. Plaintiff received a breach notification letter dated February 18, 2026, stating that her name, account number, client ID, customer ID, company internal ID number, and Medicaid number were compromised in the Data Breach.

14. As a result of the Data Breach, Plaintiff has spent time dealing with the consequences of the Data Breach, including time spent verifying the legitimacy of the breach, changing her passwords as a protective measure, and time spent closely monitoring potentially compromised accounts and activity occurring with potentially compromised data. This time has been lost forever and cannot be recaptured.

15. Since the Data Breach, Plaintiff has experienced an increase in spam emails, which, upon information and belief, is attributable to the compromise of her Private Information in the Data Breach.

16. Once Private Information is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff will need to maintain heightened monitoring measures for years.

17. Plaintiff also suffered actual injury from having Private Information compromised as a result of the Data Breach, including, but not limited to: (a) damage to and diminution in the value of Plaintiff's confidential Private Information—a form of intangible property that Plaintiff

entrusted to AMA, which was compromised as a result of the Data Breach it failed to prevent; and (b) a violation of Plaintiff's privacy rights as a result of AMA's unauthorized disclosure of Private Information.

18. Had Plaintiff known that AMA does not adequately protect Private Information, Plaintiff would not have utilized AMA's services and would not have agreed to provide AMA with her Private Information.

19. Plaintiff suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy.

20. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

21. As a result of AMA's failure to adequately safeguard Plaintiff's information, Plaintiff has been injured. Plaintiff is also at continued risk of harm because, upon information and belief, the Private Information remains in AMA's systems, which have already been shown to be susceptible to compromise and attack, and is subject to further attack so long as AMA fails to undertake the necessary and appropriate data security measures to protect the Private Information in its possession.

22. Plaintiff is willing and able to serve as class representative in this action. Plaintiff has retained counsel experienced in the prosecution of complex class actions, including data breach litigation.

### Defendant

23. Defendant Alert Medical Alarms, Inc. is a Pennsylvania corporation headquartered at 100 West Avenue, Suite 901-S, Jenkintown, Pennsylvania 19046 (Montgomery County). AMA

provides personal emergency response systems for seniors and medically vulnerable individuals nationwide.

## JURISDICTION AND VENUE

24. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the class is a citizen of a different state than Defendant, there are more than 100 members of the class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. Given that the Data Breach affected approximately 39,218 individuals and the compromised data includes Social Security numbers, bank account numbers, and protected health information, the amount in controversy is readily met.

25. This Court has personal jurisdiction over AMA because AMA maintains its principal place of business in Pennsylvania and conducts substantial business in Pennsylvania and in this District; engaged in the conduct at issue herein from and within this District; and otherwise has substantial contacts with this District and purposely availed itself of the Courts in this District.

26. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). AMA resides in this District within the meaning of § 1391(c), as its principal place of business is located in Jenkintown, Montgomery County, Pennsylvania. Additionally, a substantial part of the events and omissions giving rise to this action occurred in this District, including AMA's maintenance of its computer network and data systems from which Plaintiff's and Class Members' Private Information was accessed and exfiltrated.

27. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

## A. Overview of Alert Medical Alarms

28. AMA is a Pennsylvania corporation headquartered in Jenkintown that provides personal emergency response systems ("PERS") designed to provide immediate emergency assistance and monitoring to seniors and medically vulnerable individuals, thereby supporting improved health outcomes and enabling independent living.

29. In the regular course of its business, AMA collects and maintains PII and PHI. As a regular part of its business, AMA requires individuals to provide personal information directly or indirectly before it provides its services. AMA stores this information digitally on its network and information systems.

30. AMA is required to implement adequate safeguards to prevent unauthorized use or disclosure of Private Information, including by implementing requirements of the HIPAA Security Rule and to report any unauthorized use or disclosure of Private Information, including incidents that constitute breaches of unsecured protected health information as in the case of the Data Breach complained of herein.

31. Plaintiff and Class Members are, or were, current or former patients and/or customers of AMA who utilized AMA's PERS services, or otherwise are affiliated or transacted with AMA, and entrusted AMA with their Private Information or otherwise had their Private Information entrusted to AMA.

32. Because of the highly sensitive and personal nature of the information AMA acquires and stores—including medical conditions, prescription information, Medicaid numbers, and other health-related data—Plaintiff and Class Members reasonably expected that AMA would, among other things: keep their Private Information confidential; comply with healthcare industry standards related to data security and Private Information; inform them of legal duties and comply

7

with all federal and state laws protecting their Private Information; only use and release their Private Information for reasons that relate to medical care and treatment; and provide adequate notice to them if their Private Information is disclosed without authorization.

### B. AMA Is Subject to HIPAA Requirements

33. On information and belief, AMA is a covered entity or business associate under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

34. HIPAA's Privacy Rule establishes national standards for the protection of health information. HIPAA's Security Rule establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

35. HIPAA requires AMA to "compl[y] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

36. HIPAA's Security Rule requires AMA to, among other things: (a) ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits; (b) protect against any reasonably anticipated threats or hazards to the security or integrity of such information; (c) protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and (d) ensure compliance by its workforce. See 45 C.F.R. § 164.306.

37. HIPAA also requires AMA to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

38. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400–414, requires AMA to provide notice of the Data Breach to each affected individual 'without unreasonable delay and in no case later than 60 days following discovery of the breach.' 45 C.F.R. § 164.404(a)(2). AMA discovered the breach on or about June 17, 2025, but did not begin notifying affected individuals until approximately February 17 to 20, 2026,  more than eight months after discovery and more than seventy-five days after completing its data review on December 1, 2025. Under either measure, AMA's delay in providing notification exceeded the HIPAA standard.

39. Plaintiff does not bring claims in this action for direct violations of HIPAA, but charges Defendant with various legal violations predicated upon the duties set forth in HIPAA and other applicable standards.

**C. The Data Breach Compromised Plaintiff's and Class Members' Private Information**

40. On or about June 17, 2025, cybercriminals gained unauthorized access to AMA's network and information systems. AMA discovered suspicious activity on or about June 17, 2025, and engaged a cybersecurity firm to investigate.

41. AMA's investigation determined that an unauthorized actor may have accessed and acquired certain files on AMA's computer systems containing Private Information. AMA completed its data review by approximately December 1, 2025.

42. Despite completing its review by December 1, 2025, AMA did not begin notifying affected individuals until approximately February 17–20, 2026. The Data Breach reportedly impacted the Private Information of approximately 39,218 individuals nationwide.

43. The compromised Private Information includes, but is not limited to: names, addresses, dates of birth, bank account numbers, customer ID numbers, case numbers, health insurance information, Medicaid numbers, prescription and medication information, medical conditions, and Social Security numbers. The exact data compromised varies by individual.

44. AMA's disclosures omit pertinent information including how criminals gained access to its systems, what computer systems were impacted, the means and mechanisms of the cyberattack, how it determined that Private Information had been accessed, and, of particular importance to Plaintiff and Class Members, what actual steps AMA took following the Data Breach to secure its systems and train its employees to prevent further cyberattacks.

45. The Private Information contained in the files accessed by cybercriminals appears not to have been encrypted, because, if properly encrypted, the attackers would have acquired unintelligible data and would not have "accessed" Private Information.

46. AMA had obligations created by HIPAA, industry standards, and common law to Plaintiff and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

### D. AMA Failed to Follow FTC Guidelines

47. AMA was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an

"unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

48. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. These guidelines note that businesses should protect personal information; properly dispose of information no longer needed; encrypt information stored on networks; understand network vulnerabilities; and implement policies to correct security problems.

49. AMA failed to properly implement basic data security practices. AMA's failure to employ reasonable and appropriate measures to protect against unauthorized access to Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

### E. AMA Failed to Comply with Industry Standards

50. Experts studying cybersecurity routinely identify healthcare providers and their business associates as being particularly vulnerable to cyberattacks because of the value of the PII and PHI which they collect and maintain. AMA, as a provider of PERS to medically vulnerable populations, collected and maintained particularly sensitive Private Information.

51. Several best practices have been identified that at a minimum should be implemented by entities like AMA, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption; multi-factor authentication; backup data; and limiting which employees can access sensitive data.

52. AMA failed to meet the minimum standards of the NIST Cybersecurity Framework, the Center for Internet Security's Critical Security Controls (CIS CSC), and other established standards in reasonable cybersecurity readiness.

**F. AMA Owed Plaintiff and Class Members a Duty to Safeguard Their Private Information**

53. In addition to its obligations under federal and state laws, AMA owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

54. AMA owed a duty to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, including adequately training its employees and others who accessed Private Information within its computer systems on how to adequately protect Private Information.

55. AMA owed a duty to implement processes that would detect a compromise of Private Information in a timely manner and to act upon data security warnings and alerts in a timely fashion.

56. AMA owed a duty to disclose in a timely and accurate manner when and how the Data Breach occurred.

57. AMA breached its obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data, including, but not limited to: (a) failing to maintain an adequate data security system; (b) failing to adequately protect Private Information; (c) failing to properly monitor its own data security systems for existing intrusions; (d) failing to sufficiently train its employees regarding the proper handling of Private Information; (e) failing to fully comply with FTC guidelines for cybersecurity; (f) failing to adhere to HIPAA guidelines and industry standards; and (g) otherwise breaching its duties to protect Plaintiff's and Class Members' Private Information.

### G. AMA Knew That Criminals Target PII/PHI from Healthcare Entities

58. AMA's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach. At all relevant times, AMA knew, or should have known, Plaintiff's and all other Class Members' Private Information was a target for malicious actors.

59. Cybercriminals seek out PHI at a greater rate than other sources of personal information. PHI has been referred to as a "treasure trove for criminals." Healthcare records can sell for 50 times the price of a stolen Social Security number or credit card number on the black market.

60. AMA's customers are seniors and medically vulnerable individuals—a population particularly susceptible to the consequences of identity theft and fraud and particularly ill-equipped to monitor for and address unauthorized use of their personal and medical information.

61. Personal Information is a valuable property right. The value of Private Information as a commodity is measurable. According to published cybersecurity research, personal information can be sold for approximately $40 to $200 on the dark web. All-inclusive health insurance dossiers containing names, addresses, SSNs, and bank account information have been reported to fetch up to $1,000 or more each on the black market.

### H. The Data Breach Was Foreseeable and Preventable

62. Data breaches are preventable. In almost all cases, data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions. Organizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised.

63. Had AMA remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented the intrusion into its systems and, ultimately, the theft of Plaintiff's and Class Members' confidential Private Information.

### I. Plaintiff's and Class Members' Damages

64. To date, AMA has done little to provide Plaintiff and Class Members with relief for the damages they have suffered as a result of the Data Breach. AMA offered complimentary credit monitoring and identity theft protection services, but the credit monitoring does nothing to compensate Class Members for damages incurred and time spent dealing with the Data Breach.

65. Plaintiff and Class Members have suffered or will suffer actual harms for which they are entitled to compensation, including but not limited to: (a) trespass, damage to, and theft of their personal property, including Private Information; (b) improper disclosure of their Private Information; (c) the certainly impending injury flowing from the substantial risk of future fraud and identity theft given the nature of the Private Information compromised; (d) damages flowing from AMA's untimely and inadequate notification of the Data Breach; (e) loss of privacy; (f) ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach; (g) ascertainable losses in the form of deprivation of the value of their Private Information; and (h) emotional distress.

66. The ramifications of AMA's failure to keep secure the Private Information are long lasting and severe. Once Private Information is stolen—particularly SSNs, Medicaid numbers, and PHI—fraudulent use of that information and damage to victims may continue for years. Cybercriminals may not use the information right away, and stolen data may be held for a year or more before being used to commit identity theft.

## CLASS ALLEGATIONS

67. Plaintiff brings this class action individually and on behalf of all members of the following class of similarly situated persons pursuant to Federal Rule of Civil Procedure 23:

**Nationwide Class:** All persons in the United States whose Private Information was compromised in the Data Breach disclosed by Alert Medical Alarms, Inc. including all who were sent notice of the Data Breach.

68. Alternatively, or in addition to the nationwide class, Plaintiff seeks to represent the following state class:

**Pennsylvania Class:** All persons in Pennsylvania whose Private Information was compromised in the Data Breach disclosed by Alert Medical Alarms, including all who are sent notice of the Data Breach.

69. Excluded from the class(es) are Defendant and its affiliates, parents, subsidiaries, officers, agents, and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsel and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

70. Plaintiff reserves the right to modify or amend the definition of the proposed class before the Court determines whether certification is appropriate.

71. **Numerosity:** The members in the class are so numerous that joinder of all class members in a single proceeding would be impracticable. As noted above, approximately 39,218 individuals' Private Information was exposed in the Data Breach. The class members are

identifiable within Defendant's records inasmuch as Defendant has already provided them with notification of the breach.

72. **Commonality and Predominance:** Common questions of law and fact exist as to all class members and predominate over any potential questions affecting only individual class members. Such common questions include, inter alia: (a) whether AMA had a duty to implement and maintain reasonable security procedures; (b) whether AMA's data security practices violated the FTC Act, HIPAA, state laws, and/or other duties; (c) when AMA actually learned of the Data Breach; (d) whether AMA failed to adequately respond to the Data Breach; (e) whether Plaintiff and Class Members suffered injury as a proximate result of AMA's negligent actions; (f) whether AMA adequately addressed the vulnerabilities which permitted the Data Breach; (g) whether injunctive relief is appropriate; and (h) whether Plaintiff and Class Members are entitled to damages and the measure of such damages.

73. **Typicality:** Plaintiff's claims are typical of the claims of the class. Plaintiff, like all proposed members of the class, had Private Information compromised in the Data Breach. Plaintiff and Class Members were injured by the same wrongful acts, practices, and omissions committed by AMA. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all class members.

74. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is an adequate representative of the class and has no interests adverse to, or in conflict with, the class that Plaintiff seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex class actions of this nature.

75. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy. The damages suffered by individual class members are

relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for class members to individually seek redress. Individualized litigation creates a potential for inconsistent or contradictory judgments.

76. Further, AMA has acted or refused to act on grounds generally applicable to the class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On behalf of Plaintiff and the Class)

77. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

78. AMA collected the Private Information of Plaintiff and Class Members in the ordinary course of providing services directly or indirectly to Plaintiff and Class Members.

79. AMA owed a duty to Plaintiff and all other Class Members to exercise reasonable care in safeguarding and protecting their Private Information in its possession, custody, or control. AMA's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected. AMA's duties arose under common law, HIPAA, FTC guidance, and state law.

80. AMA knew, or should have known, the risks of collecting and storing Plaintiff's and Class Members' Private Information and the importance of maintaining secure systems, particularly given the sensitive medical nature of the data maintained by a PERS provider.

81. AMA breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' Private Information by failing to design, adopt,

implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems.

82. It was reasonably foreseeable to AMA that its failure to exercise reasonable care would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' Private Information.

83. AMA's duty of care also arose as a result of the special relationship that existed between AMA and its patients and customers. AMA was in a superior position to ensure that its systems were sufficient to protect against the foreseeable risk of harm from a data breach.

84. But for AMA's negligent conduct, Plaintiff's and Class Members' Private Information would not have been compromised.

85. As a result of AMA's wrongful actions and inaction, Plaintiff and all other Class Members have suffered, and will continue to suffer, economic damages and other injury including, inter alia: (i) a substantially increased risk of identity theft and medical identity theft; (ii) improper disclosure of their Private Information; (iii) breach of the confidentiality of their Private Information; (iv) deprivation of the value of their Private Information; (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach; and (vi) emotional distress.

86. Plaintiff and Class Members are entitled to compensatory and consequential damages and injunctive relief.

## COUNT II
## BREACH OF IMPLIED CONTRACT
### (On Behalf of Plaintiff and the Class)

87. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

88. When Plaintiff and Class Members provided their Private Information to Defendant as a condition of receiving services, an implied contract was formed between Defendant and each

patient. The terms of this implied contract included Defendant's obligation to implement and maintain reasonable data security measures to protect the Private Information it collected and stored, and to use such information only for purposes authorized by the patient or required by law.

89. The implied contract included, among other things, the following implied promises: (a) taking steps to ensure that anyone granted access to Private Information also protects the confidentiality of that data; (b) restricting Private Information access only to employees and agents who are qualified and trained; (c) designing and implementing appropriate retention policies to protect Private Information; (d) applying proper encryption and/or the separation of different data sets containing Private Information; (e) implementing multi-factor authentication for access to Private Information; (f) taking steps to ensure that Private Information placed in control of Defendant's employees or agents is restricted and limited to authorized business purposes; and (g) taking other reasonable steps to protect against foreseeable breaches.

90. Plaintiff and Class Members provided valuable consideration in the form of their Private Information and, where applicable, direct or indirect payment for services, with the reasonable understanding and expectation that Defendant would safeguard their Private Information in accordance with applicable law and industry standards. Plaintiff and Class Members would not have provided their Private Information to Defendant, or would have insisted on additional protections, had they known that Defendant would fail to implement reasonable security measures.

91. Defendant breached the implied contract by failing to implement and maintain reasonable data security practices, which directly resulted in the unauthorized access and exfiltration of Plaintiff's and Class Members' Private Information.

92. As a direct and proximate result of Defendant's breach of the implied contract, Plaintiff

and Class Members have suffered damages as described herein, including but not limited to the loss of the benefit of the bargain, overpayment for services, and the costs of mitigating the effects of the Data Breach.

## COUNT III
## UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class)

93. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

94. This claim is pleaded in the alternative to any current or future contract claims, pursuant to Fed. R. Civ. P. 8(d).

95. Plaintiff and Class Members conferred a monetary benefit, directly or indirectly, upon AMA in the form of monies paid for PERS services or other services.

96. AMA accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members. AMA also benefitted from the receipt of Plaintiff's and Class Members' Private Information.

97. As a result of AMA's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices that Plaintiff and Class Members paid for, and those payments without reasonable data privacy and security practices that they received.

98. Under principles of equity and good conscience, AMA should not be permitted to retain the money belonging to Plaintiff and Class Members because AMA failed to adequately implement data privacy and security procedures that Plaintiff and Class Members paid for and that were otherwise mandated by federal, state, and local laws, and industry standards.

## COUNT IV
## DECLARATORY AND INJUNCTIVE RELIEF
### (On behalf of Plaintiff and the Class)

99. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

100. This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

101. AMA owes a duty of care to Plaintiff and Class Members that requires it to adequately secure Plaintiff's and Class Members' Private Information. AMA still possesses the Private Information of Plaintiff and Class Members.

102. Actual harm has arisen in the wake of the Data Breach regarding AMA's duties of care to provide security measures. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their Private Information and AMA's failure to address the security failings that led to such exposure.

103. There is no reason to believe that AMA's employee training and security measures are any more adequate now than they were before the breach.

104. Plaintiff therefore seeks a declaration that AMA's existing data security measures do not comply with its duties of care to provide adequate data security, and that to comply with its duties, AMA must implement and maintain reasonable security measures, including, but not limited to:

    a. Prohibiting AMA from engaging in the wrongful and unlawful acts described herein;

    b. Ordering AMA to engage internal security personnel and third-party security auditors to conduct testing, including penetration tests and audits on AMA's systems, on a periodic basis;

    c. Requiring AMA to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

d. Ordering AMA to audit, test, and train its security personnel and employees regarding any new or modified data security policies and procedures;

e. Ordering AMA to purge, delete, and destroy, in a reasonably secure manner, any Private Information not necessary for its provision of services;

f. Ordering AMA to conduct regular database scanning and security checks;

g. Requiring AMA to segment data by creating firewalls and access controls so that if one area of AMA's network is compromised, hackers cannot gain access to other portions;

h. Requiring AMA to implement logging and monitoring programs sufficient to track traffic to and from AMA's servers;

i. For a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate AMA's compliance; and

j. Such other and further relief as this Court may deem just and proper.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all other members of the class, respectfully requests that the Court enter judgment in Plaintiff's favor and against AMA as follows:

A. Certifying the class(es) as requested herein, designating Plaintiff as class representative, and appointing Plaintiff's counsel as Class Counsel;

B. Awarding Plaintiff and the class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C. Awarding Plaintiff and the class equitable, injunctive, and declaratory relief, including but not limited to appropriate injunctive relief designed to prevent AMA from experiencing another data breach by adopting and implementing best data security practices to safeguard

Private Information, and to provide or extend credit monitoring services to protect against all types of identity theft and medical identity theft;

D. Awarding Plaintiff and the class pre-judgment and post-judgment interest to the maximum extent allowable;

E. Awarding Plaintiff and the class reasonable attorneys' fees, costs, and expenses, as allowable; and

F. Awarding Plaintiff and the class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims so triable.

Dated: February 25, 2026.                    Respectfully submitted,

**KOPELOWITZ OSTROW, P.A.**

*/s/ Kenneth Grunfeld*
Kenneth Grunfeld (PA Bar # 84121)
65 Overhill Road
Bala Cynwyd, Pennsylvania 19004
Main: 954-525-4100
grunfeld@kolawyers.com

*and*

Scott J. Falgoust (La. Bar Roll No. 33545)*
**BRYSON HARRIS SUCIU & DEMAY PLLC**
5301 Canal Boulevard
New Orleans, LA 70124
(919) 585-5634
sfalgoust@brysonpllc.com

*Application for *pro hac vice* forthcoming

*Attorneys for Plaintiff*